IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DEBBIE L. DYE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-3059-CV-S-ODS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security. | ) |
| | ) |

## ORDER AND OPINION AFFIRMING IN PART AND REVERSING IN PART COMMISSIONER'S FINAL DECISION AND REMANDING WITH INSTRUCTIONS TO CALCULATE AND AWARD BENEFITS

Pending is Plaintiff's appeal of the Commissioner's final decision denying her application for disability and supplemental security income benefits. The Court agrees that Plaintiff became disabled while her application was pending, so the Commissioner's final decision is affirmed in part and reversed in part.

Plaintiff filed her application for benefits in July 2006, alleging an onset date of November 23, 2004, due to a combination of degenerative disc disease, back and leg pain, and depression. However, Plaintiff has narrowed her claim to one premised on depression and argues for an onset date of April 4, 2006. Plaintiff's abandonment of portions of her original claims means there is now no need to consider Plaintiff's back and leg problems, and the Court can also focus on the period after April 4, 2006.

In April 2006, Plaintiff was prescribed Effexor and Seroquel. Seroquel is an antipsychotic medication used to treat schizophrenia and bipolar disorder. Effexor is an antidepressant. Contemporaneous doctor notes suggest Plaintiff was diagnosed as suffering from bipolar disorder and depression, but nothing suggests the severity of those conditions. However, Eva Wilson, Psy.D., conducted a consultative psychological examination on February 1, 2006, and concluded Plaintiff was "mildly cognitively impaired, but I believe that she could understand and remember simple, some semicomplex but probably not complex instructions due to this impairment. She could sustain concentration and persistence with simple but not semicomplex or complex

tasks for the same reasons. She does not appear to have trouble interacting socially or adapting to her environment." Plaintiff's GAF score was 60. R. at 334.

A hearing was held in October 2008; at the conclusion, the ALJ ordered that Plaintiff submit to a consultative examination by an internist. R. at 62. While this was being arranged, Plaintiff's counsel arranged for Dr. Wilson to re-examine Plaintiff. Dr. Wilson's November 19, 2008, evaluation noted a deterioration in Plaintiff's condition. Plaintiff "appeared to be depressed more so than previously." R. at 633. Diagnostic testing placed her "in the impaired range of intellectual and memory functioning. This is a deterioration from her previous functioning." R. at 634. Dr. Wilson opinions about Plaintiff's ability to follow instructions and maintain concentration, persistence and pace were not changed, but she indicated Plaintiff "has become more seriously depressed than previously, and probably would have trouble interacting socially and adapting to her environment." R. at 634. Plaintiff's GAF score, both then and for the past year, was 50. R. at 634. Dr. Wilson completed a medical source statement indicating Plaintiff was markedly limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform within a schedule, maintain regular attendance, work with others, or complete a workday or workweek without interruptions from psychologically-based symptoms. R. at 638.

In January 2009, Plaintiff was referred to two more consulting psychologists: one (Brooke Whisenhunt) by the Commissioner and the other (Kimberley Wilkins) by the Missouri Division of Family Services. Dr. Whisenhunt assessed Plaintiff as suffering from panic disorder with agoraphobia and major depressive disorder and indicated Plaintiff's GAF score was 50. R. at 644. She also indicated Plaintiff "seemed able to understand and remember moderately complex instructions[,] sustain concentration and persistence on easy tasks[, and] interact in at least minimally demanding social situations." R. at 645. Dr. Wilkins administered a battery of tests but concluded the results were invalid because Plaintiff was exaggerating her symptoms. While the tests were not relied upon, Dr. Wilkins indicated Plaintiff suffers from major depressive disorder and assessed her GAF at 50. R. at 664-65.

Plaintiff does not see a mental health specialist on her own. As stated, she has received medication for depression and bipolar disorder from her family doctor (either Paul Glynn or Stephen Thies), but her doctor has not assessed Plaintiff's GAF score. In fact, it appears Plaintiff usually sees a physician's assistant (Robyn Yost) in her doctor's office, and not the doctor himself. Ms. Yost completed a Medical Questionnaire on September 25, 2008, indicating Plaintiff has trouble dealing with people, gets angry easily, and is antisocial. Ms. Yost also indicated her belief that Plaintiff "needs a neuropsychological exam," suggesting she was not comfortable offering further explanation of Plaintiff's condition. R. at 615-20,

The hearing was reconvened on March 31, 2009, and testimony was elicited from a vocational expert. The VE testified that a person limited in the manner described in Dr. Wilson's November 2008 report would not be able to work. R. at 31. The VE also testified that a person with a consistent GAF score of 50 could not work. R. at 34.

In his written opinion, the ALJ discounted Dr. Wilson's November 2008 assessment because "save for a handful of updates" he regarded it as "a carbon copy" of her February 2006 report. The ALJ also believed Dr. Wilson's medical source statement – indicating Plaintiff was markedly limited in a variety of areas – was inconsistent with the report's statement regarding Plaintiff's ability to follow instructions and maintain concentration, persistence and pace. For these reasons, the ALJ gave "very little weight to either of Dr. Wilson's reports." R. at 19. The ALJ relied on Dr. Whisenhunt's narrative, but made no mention of the diagnosis or GAF score she reported. R. at 18-19. The ALJ discounted the entirety of Dr. Wilkins' report because of the indications of malingering. R. at 17-18.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final

decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).  Plaintiff offers no reasons to reject the Commissioner's decision insofar as it relates to Plaintiff's physical condition, nor does she offer reasons to reject the Commissioner's decision insofar as it relates to the time period before April 4, 2006.  The Commissioner's final decision is affirmed to these extents.

Plaintiff argues that she has a GAF score of 50, and the VE's testimony establishes such a person cannot work in the national economy.  Plaintiff further argues that she had a GAF score on April 4, 2006, when she was prescribed Effexor and Seroquel.  The Court agrees, but only in part.  In particular, there is not substantial evidence in the Record as a whole to justify discounting Dr. Wilson's opinion.  The ALJ described her two reports as essentially the same, which is not entirely accurate.  The November 2008 report contains much of the same background information, but it clearly indicates that Plaintiff's condition had deteriorated since Dr. Wilson last saw Plaintiff in February 2006.  The fact that Dr. Wilson saw Plaintiff on two different occasions provided her an advantage none of the other mental health professionals, and made her uniquely positioned to evaluate changes in Plaintiff's condition over time.  Dr. Wilson's medical source statement is inconsistent with *portions* of her report, but it is consistent with the report as a whole.  While Dr. Wilson indicated Plaintiff was markedly limited in nine of twenty functional areas, she also found Plaintiff was moderately limited (or less) in the other eleven – thus resulting in an overall assessment that Plaintiff was moderately limited.  However, the specific areas of marked limitation are important, particularly in the context of assessing a claimant's functional capacity.  Importantly, the medical source statement is not inconsistent with Dr. Wilson's narrative.  Finally, Dr. Wilson's assessment is based on observations and factors that are confirmed by Plaintiff's regular medical provider.  While Ms. Yost may not be a mental health professional, her observations and assessments have some value – and here, they

buttress the findings made by a mental health professional.  Ultimately, there was no reason to discount Dr. Wilson's November 2008 assessment.

If any report is inconsistent, it is Dr. Whisenhunt's.  The ALJ documented all of the statements in Dr. Whisenhunt's report that support a finding of not disabled, but those statements are inconsistent with Dr. Whisenhunt's assessment that Plaintiff's GAF was 50.  Those statements (apart from the GAF score) are also inconsistent with the remaining evidence in the Record.  As for Dr. Wilkins, it is true that believed Plaintiff was malingering on the tests.  Nonetheless, Dr. Wilkins opined that even with Plaintiff's "over-reporting of symptoms she is likely coping with depression at this time."  R. at 665.  Moreover, Dr. Wilkins still assessed Plaintiff's GAF at 50.

The evidence in the Record demonstrates Plaintiff lacks the capacity to work.  There was no basis for discounting Dr. Wilson's second assessment, and the VE testified that a person limited in the manner described therein could not work.  Moreover, three independent experts determined Plaintiff's GAF score was 50, and the VE testified that such a person could not work.

The next issue is: when did Plaintiff become disabled?  According to Dr. Wilson, Plaintiff's GAF score was 60 in February 2006.  Plaintiff suggests her score "dropped" to 50 in April 2006 when she was prescribed Seroquel, but the Record does not support such a conclusion.  The only date supported by the Record is the date Dr. Wilson made her second assessment.  The Commissioner's final decision is reversed, and the case is remanded with instructions to calculate and award benefits using a disability onset date of November 19, 2008.

IT IS SO ORDERED.

DATE: December 8, 2010

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT